UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ANDREA COLLARD GONZALES AND KEVIN WHITT, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | CIVIL CASE NO. 4:22-cv-416 |
| AMY DANKEL, CHERRIE SILAS, JOHN DOE, OFFICER 1, OFFICER 2, AND OFFICER 3, | § § § § | |
| DEFENDANTS. | § § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

COME NOW, Plaintiffs Andrea Collard Gonzales and Kevin Whitt, to file this their Original Complaint against Defendants Amy Dankel, Cherrie Silas, John Doe, Officer 1, Officer 2, and Officer 3, and respectfully represent the following.

## I.
## PARTIES

1.     Andrea Collard Gonzales is an individual residing in Collin County, Texas.

2.     Kevin Whitt is an individual residing in Collin County, Texas.

3.     Amy Dankel is an elected Trustee and the President of the McKinney Independent School District Board of Trustees ("MISD Board") who may be served with process at 1504 Windsor Dr., McKinney, TX 75072 or wherever she may be found.

4.     Cherrie Silas is a police officer with the McKinney Police Department who may be served with process at 2200 Taylor Burk Dr., McKinney, Texas 75071 or wherever she may be found.

5.     John Doe is, upon information and belief, an employee of the McKinney Independent School District whose identity will be discovered in the course of this action and who may be served with process at 4201 S. Hardin Blvd., McKinney, Texas 75070 or wherever he may be found.

6.     Officer 1 is a police officer with the McKinney Police Department whose identify will be discovered in the course of this action and who may be served with process at 2200 Taylor Burk Dr., McKinney, Texas 75071 or wherever he may be found.

7.     Officer 2 is a police officer with the McKinney Police Department whose identify will be discovered in the course of this action and who may be served with process at 2200 Taylor Burk Dr., McKinney, Texas 75071 or wherever he may be found.

8.     Officer 3 is a police officer with the McKinney Police Department whose identify will be discovered in the course of this action and who may be served with process at 2200 Taylor Burk Dr., McKinney, Texas 75071 or wherever he may be found.

## II.
## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the Constitutional and laws of the

United States.   This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1343 because this actions alleges deprivations of constitutional rights, including a conspiracy to deprive or failure to prevent or render aid regarding such deprivations.

10.    This Court has personal jurisdiction over defendants because they are residents of the State of Texas.

11.    Venue is proper in this district because one or more Defendants reside in this district and the events from which this action arises occurred in this district.

### III.
### CONDITIONS PRECEDENT

12.    All conditions precedent to this action have occurred.

### IV.
### FACTUAL ALLEGATIONS

13.    Plaintiffs Kevin Whitt and Andrea Collard Gonzales decided to attend the MISD Board meeting held on April 26, 2022 at the MISD Community Event Center, located at 4201 S. Hardin Blvd., McKinney, Texas 75070.

14.    Plaintiffs attended because they had learned that parents with children in McKinney Independent School District ("MISD") schools had identified numerous books in the MISD school libraries that contain sexually explicit and obscene material inappropriate for minor children, and they wished to express their opinions to the MISD Board that the books at issue should be removed from MISD school libraries to protect children

15.     At the outset of the meeting,  Defendant Amy Dankel, the President of the MISD Board, announced that, during the public comment segment of the meeting, no public applause or any other sound would be tolerated from the public.  Dankel stated that the only expression allowed at the meeting would be for the public to raise a hand silently if they agreed with what a speaker said.  There was also a sign present upon entry into the meeting stating "No Signs Permitted" to restrict the public from bringing in signs to express their views.  Upon information and belief, Amy Dankel directed this sign to be displayed.

16.     There were several McKinney Police officers present in the room during the meeting.  Dankel announced that the McKinney Police would remove any member of the public who violated her edict regarding applause and noise during the public comment segment of the meeting.  Dankel designated John Doe to point out which members of the crowd were violating the rules she set so that the McKinney Police would know who to remove.

17.     Plaintiffs Whitt and Gonzales were not able to hear Dankel's announcement of rules because the crowd was so large, they were not able to make it into the room when the announcement was made.  Despite a large turnout from the public at the meeting, a removable wall in the meeting hall was in place to reduce the size of the meeting hall.  This wall is not typically in place for MISD Board meetings. The presence of the wall drastically reduced the size of the area available to the public and had no apparent purpose other than to arbitrarily limited the amount of people that could fit into the meeting.

18.     The crowd present at the meeting consisted almost entirely of two groups.  One group wore green apparel to show support for MISD Board Trustee, Chad Green, who is a member of the MISD Board that has been speaking out in public to oppose the existence of sexually explicit books in MISD school libraries.  Those wearing the color green were, in effect, making a statement that they supported removal of the books in question.  The other group present at the meeting wore blue as a sign that they opposed removal of the books.

19.     Despite the rules Dankel announced, members of the public wearing both green and blue did clap and make statements and noises in support of or in opposition to several speakers during the public comment segment of the meeting. Despite the obvious and apparent fact that members of both groups were clapping and making noises, John Doe only pointed out individuals in the crowd wearing green for removal from the meeting.  The McKinney Police officers removed those individuals by force.  Not a single individual in the crowd wearing blue was identified and removed despite displaying similar behavior to those wearing green.

20.     During the public comment segment of the meeting, Whitt got up to speak for 1 minute at the podium to state his support for the removal of sexually explicit books from the MISD school libraries, pursuant to a 1-minute time limit Dankel had set for public comments.

21.     Sometime after Whitt spoke, a woman read an excerpt from one of the books in the MISD school libraries that described a graphic sexual scene involving minors.

22.     After the woman was finished reading the passage and her time was up, Whitt said the word "disgusting."  Upon hearing Whitt's comment, Dankel stopped the meeting and asked John Doe to point out who had made the comment.  John Doe pointed out Whitt, and Dankel instructed the McKinney Police to remove Whitt from the meeting.

23.     Officers 1 and 2 approached Whitt who made the following statements or substantially similar statements: "This is the United States of America. I have a right to freedom of speech.  I'm not leaving."  Officers 1 and 2 then put their hands on Whitt and began pushing him out the door.

24.     Officers 1 and 2 kept pushing Whitt toward the stairs and the public could hear Whitt loudly protesting the officers' actions in removing him.  When Whitt reached the stairs, he informed the officers that he needed to take the elevator because he has a serious medical condition that prevents him from safely taking stairs and asked to go down the elevator.  Officers 1 and 2 refused to let Whitt take the elevator, stating "just go down the stairs" until a third police officer intervened and allowed Whitt take the elevator to exit the building.

25.     Gonzales was also listening to the public comments while awaiting her turn to speak.  Gonzales heard a man close to her say the word "amen" in response to one of the public comments.  Officer Cherrie Silas approached this man and a female who was with him.  The female appeared nervous and so Gonzales made a statement to the female in front of Officer Silas regarding First Amendment constitutional rights and rights conferred to the public by the Texas Open Meetings Act.

26.     Officer Silas then turned her attention to Gonzales who asked why Silas was approaching her and informed Silas that she, Gonzelez, was there to speak at the meeting.  Gonzales showed Officer Silas the form she had been required to fill out in order to speak.  Then, without warning, Officer Silas grabbed Gonzales's arm with such force that it caused pain to Gonzales and, with the help of Officer 3, lifted Gonzales off her feet and carried her out of the meeting, depriving her of the opportunity to speak at the meeting.

27.     Gonzales asked both officers why she was being removed and what crime she had committed.  Neither gave her an answer.

28.     Upon information and belief, John Doe had pointed at Gonzales prior to the officers removing her from the meeting.

29.     At one point in the meeting, a man named Samuel Hall had spoken in opposition to the books.  He made a comment out loud after another speaker and removed himself from the meeting before Dankel, John Doe, and the McKinney Police had the opportunity to remove him.

30.     While Hall was walking out, numerous individuals wearing blue clapped loudly.  Those wearing green protested to Dankel that these individuals had violated the rules announced by Dankel and that they should be removed since several green-shirted members of the crowd had been removed for clapping.

31.     Dankel refused to apply the rule to the blue-shirted members of the crowd and allowed them to stay.  Dankel did not order the removal of a single member of the public wearing blue from the meeting despite the fact that many of these

individuals violating Dankel's rule equally as much as green-shirted individuals. John Doe never pointed at any blue-shirted member of the crowd and the McKinney Police never removed any blue-shirted individuals.

**V.**
**CAUSES OF ACTION**

**A. COUNT ONE – 42 U.S.C. § 1983: Conspiracy and conduct to deprive of rights guaranteed by the First Amendment to the Constitution and in retaliation for the free exercise thereof.**

32.    Plaintiffs incorporate all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

33.    At the MISD Board meeting, Plaintiffs were private citizens who spoke or intended to speak as to a matter of public concern at a meeting held by local government officials where citizens are allowed to peaceably assemble, associate, and engage in free speech as to matters of public concern.

34.    The presence of sexually explicit books in MISD school libraries is a matter of public concern.

35.    Plaintiffs exercised or intended to exercise their First Amendment rights to free speech, peaceable assembly, freedom of association, and/or to petition the government for a redress of grievances.

36.    Plaintiffs' interest in exercising their First Amendment rights at the MISD Board meeting as to the matter of the sexually explicit books outweighs any interest of the MISD Board in promoting the efficient operation and administration of government services.

37.     Defendants acted in concert to deprive Plaintiffs of their protected First Amendment rights by imposing arbitrary and capricious rules restricting their freedom of speech, freedom to peaceably assemble, freedom of association, and freedom to petition the government for redress of grievance including rules that (1) prohibiting Plaintiffs from bringing signs into the meeting to express their viewpoints, (2) imposing rules prohibiting clapping and comments in response to statements by speakers, (3) by limiting the time of each speaker to 1 minute, and (4) by using the removable wall to limit the amount of space available for the public to attend the meeting in order to restrict the number of persons who were able to enter the meeting, which had the effect of restricting Plaintiffs from entering the meeting at the outset.

38.     Defendants further acted in concert to deprive Plaintiffs of their protected First Amendment rights and/or in retaliation for the free exercise of those rights by forcefully removing Plaintiffs from the meeting.

39.     Defendants specifically targeted Plaintiffs for removal from the meeting in retaliation for exercising their First Amendment right to engage in free speech, freedom to associate, and freedom to petition the government for redress of grievances in opposition to the presence of sexually explicit books in MISD school libraries.

40.     Defendants' actions would deter a person of ordinary firmness from continuing to engage in protected First Amendment rights.

41.     Defendants' decisions to act in concert to violate Plaintiffs' clearly establish constitutional rights was not objectively reasonable in light of the

circumstances because none of Plaintiffs' protected actions or intended protected actions would have disrupted the efficient operation and administration of government services.

42.     Defendants had no compelling government interest to justify imposing the rules that they imposed at the meeting or in removing Plaintiffs from the meeting.

43.     Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiffs' First Amendment rights.

44.     Defendants acted under color of the laws and regulations of the State of Texas, the MISD Board, and the City of McKinney in carrying out the deprivations of First Amendment rights described herein.  Dankal was acting in the course and scope of her duties as the President of the MISD Board.  John Doe was acting in the course and scope of his duty as an employee of MISD.  The police officers were acting in the course and scope of their duties as police officers with the McKinney Police Department.

## B. COUNT 2 – 42 U.S.C. § 1983: Gonzales's excessive force claim against Police Officers.

45.     Plaintiffs incorporate all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

46.     Officer Silas and Officer 3 used unreasonable, unnecessary, and excessive force against Gonzales when Officer Silas forcefully and aggressively grabbed Gonzales's arm, without warning, and when she and Officer 3 carried and/or dragged Gonzales from the MISD Board meeting, causing her physical pain and public humiliation.

**C. COUNT 3 – 42 U.S.C. § 1983: Deprivation of the right to equal protection under the Fourteenth Amendment.**

47.     Plaintiffs incorporate all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

48.     By only applying the rules Dankel announced for the meeting to remove Plaintiffs and other wearing green showing their support for removal of sexually explicit books while refusing to apply the same rules to those wearing blue at the meeting, Defendants acted in concert to deprive Plaintiffs of their right to equal protection of the law, as guaranteed by the Fourteenth Amendment.

49.     Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiffs' Fourteenth Amendment equal protection rights.

50.     Defendants acted under color of the laws and regulations of the State of Texas, the MISD Board, and the City of McKinney in carrying out the deprivations of Fourteenth Amendment rights described herein.  Dankal was acting in the course and scope of her duties as the President of the MISD Board.  John Doe was acting in the course and scope of his duty as an employee of MISD.  The police officers were acting in the course and scope of their duties as police officers with the McKinney Police Department.

**V.**
**DAMAGES**

51.     Plaintiffs incorporate all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

52.    As a direct and proximate result of Defendants' actions in depriving Plaintiffs of their constitutional rights and in retaliating against them for the free exercise thereof, Plaintiffs suffered mental anguish in the past and future and damage to their reputations in the past and future.

## VI.
## ATTORNEYS FEES & COSTS

53.    Plaintiff is entitled to an award of attorneys' fees and costs under 42 U.S.C. § 1988(b).

## VII.
## PRAYER

54.    WHEREFORE, Plaintiffs pray for judgment against Defendants for the following:

  a.  An award of nominal, compensatory, and punitive damages to Plaintiffs from all Defendants, jointly and severally, for their actions in violating Plaintiffs' constitutional rights;

  b.  Reasonable and necessary attorneys' fees, costs, and expenses;

  c.  Permanent injunctive relief restraining Defendants from imposing similar restraints on their constitutional rights in the future; and

  d.  All other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ *Paul M. Davis*
Paul M. Davis
Texas Bar No. 24078401
Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr. #25454
Frisco, TX 75034
945-348-7884
paul@fireduptxlawyer.com

ATTORNEY FOR PLAINTIFFS