# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ANDREA COLLARD GONZALES et al., § | |
| § | |
| Plaintiffs, § | Civil Action No. 4:22-cv-00416 |
| v. § | Judge Mazzant |
| § | |
| AMY DANKEL et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Order to Show Cause (Dkt. #40). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED.**

### BACKGROUND

In this case, Plaintiffs allege that several individuals violated their First Amendment rights when they engaged in viewpoint discrimination at a McKinney Independent School District ("MISD") Board of Trustees meeting. However, this motion does not concern the merits of any of Plaintiffs' claims or really even the facts of this case. Rather, this motion was filed by Plaintiffs' attorney, Paul Davis ("Davis"), who alleges that Defendants Amy Dankel ("Dankel") and Robert Montgomery's ("Montgomery") counsel should be ordered to show cause for why they violated the Texas Disciplinary Rules of Professional Conduct ("Disciplinary Rules").

The genesis of this dispute is a grievance filed by Lucas Henry ("Henry") with the State Bar of Texas. In the grievance, Henry alleged that Davis violated the Disciplinary Rules at an MISD Board of Trustees meeting held on May 31, 2022 (Dkt. #40, Exhibit 2 at p. 7). At that meeting, Dankel, the President of MISD, was in attendance. Henry alleged that, during the meeting, Davis went to the dais—despite being told he was not allowed there—and proceeded to

go behind Dankel's seat. There, Henry stated that Davis had taken pictures of certain documents, which included an attorney-client communication and attorney work product. The material portions of Henry's complaint are reprinted below:

> On April 26, 2022, Mr. Davis attended a meeting of the Board. At one point during the meeting, Mr. Davis attempted to approach the dais to consult with Mr. Green. President Dankel informed Mr. Davis that he was not allowed on the dais during a meeting . . . and insisted that Mr. Davis return to his place in the audience . . . On May 31, 2022, Mr. Davis again attended a meeting of the Board. When all Board members except for Mr. Green had departed from the room for a closed session at around 9:22 a.m., Mr. Davis approached the dais, despite previously being told he was not allowed there, and went behind the table to President Dankel's seat. Mr. Davis proceeded to take out his phone and take pictures of the documents on President Dankel's desk. These documents included an attorney-client communication and attorney work product

(Dkt. #40, Exhibit 2 at p. 7).

Based on these actions, Henry claimed that Davis "intended to intercept privileged information and [gain] an advantage in litigation," which runs afoul of the Disciplinary Rules (Dkt. 40, Exhibit 2 at p. 7). Further, he complained that "[r]egardless of whether privileged information was actually intercepted, Mr. Davis's intentional dishonest conduct violated [the Disciplinary Rules] and warrants corrective action" (Dkt. #40, Exhibit 2 at p. 7). The State Bar of Texas's Grievance Committee considered the complaint and ultimately determined that it should be dismissed (Dkt. #40, Exhibit 4).

Now, Davis asks the Court to discipline Henry and his supervising attorney, Charles Crawford ("Crawford"), who are currently serving as Dankel and Montgomery's attorneys in this case. More specifically, Davis avers that Crawford and Henry should be ordered to show cause for why they violated the Disciplinary Rules because Henry made "two demonstrably false statements" when he filed his grievance against Davis (Dkt. #40 at p. 2). According to Davis, no reasonable attorney would have filed the grievance in good faith, so it must be the case that Henry

filed the grievance in order to burden and harass him. Henry and Crawford argue that not only were Henry's statements true, but there is no evidence to suggest that they intended to harass Davis as he claims (Dkt. #44).

On October 6, 2022, Davis filed the current motion (Dkt. #40), which Henry and Crawford responded to on October 20, 2022 (Dkt. #44). Davis then filed a reply (Dkt. #45).

## LEGAL STANDARD

"[F]ederal district courts are bound by their own disciplinary rules when proceeding against attorneys for violation of ethical standards." *In re. Thalheim*, 853 F.2d 383, 386 (5th Cir. 1988). Local Rule AT-2 addresses attorney discipline in this Court. Though the Rule provides that attorneys should look to the standards of professional conduct adopted by the State Bar of Texas "as a guide governing the obligations and responsibilities of all attorneys," it recognizes that "no set of rules may be framed which will particularize all the duties of the attorney in varying phases of litigation or in all the relations of professional life." Local Rule AT-2(a). Thus, counsel for parties "should be familiar with the duties and obligations imposed upon members of this bar by the Texas Disciplinary Rules of Professional Conduct, court decisions, statutes, and the usages customs and practices of this bar." *Id.* The Rule authorizes disciplinary action should an attorney fail to abide by those standards. *Id.* AT-2(d). Specifically, the Rule provides:

> This court may, after an attorney has been given an opportunity to show cause to the contrary, take any appropriate disciplinary action against any attorney:
>
> (A) for conduct unbecoming a member of the bar;
> (B) for failure to comply with these local rules or any other rule or order of this court;
> (C) for unethical behavior;
> (D) for inability to conduct litigation properly; or
> (E) because of conviction by any court of a misdemeanor offense involving dishonesty or false statement.

*Id.* AT-2(d)(1).

Disciplinary proceedings are subject to a certain set of procedures. *Id.* AT-2(d)(2)(A). Once a party shows the Court that an attorney has engaged in conduct which "might warrant disciplinary action involving suspension or disbarment," the Court brings the matter to the attention of the chief judge who will then poll the full court as to whether disciplinary proceedings should be held. *Id.* If proceedings are held, then the "disciplinary matter will be assigned to the chief judge, or a judge designated by the chief judge, who will notify the lawyer of the charges and give the lawyer opportunity to show good cause why he or she should not be suspended or disbarred." *Id.*

## ANALYSIS

Davis represents that Henry filed a "frivolous and fraudulent" grievance with the State Bar of Texas against him (Dkt. #40 at p. 3). But, according to Davis, the story does not end there. Indeed, he presses on, suggesting that "no reasonable attorney would have filed the grievance at issue in good faith," and therefore, "it is apparent that Mr. Henry filed the grievance for the purpose of gaining an unfair advantage in this litigation by harassing and burdening Plaintiffs' counsel . . ." (Dkt. #40 at p. 2). As a result, the Court should order Henry and his supervising attorney, Crawford, to show cause for why they violated the Disciplinary Rules.

On the other hand, Henry and Crawford counter that Davis misconstrues the nature of the bar complaint, as Henry filed the complaint "in good faith to prevent Mr. Davis from further crossing ethical boundaries with represented persons" (Dkt. #44 at p. 5). Moreover, Henry and Crawford point out that the statements made were true, or at the very least, reasonable interpretations of events that happened. As a result, they should not be brought before the Court to show cause.

The Court starts by outlining the relevant Disciplinary Rules that Davis argues are implicated here. Then, it will address the merits of Davis's motion. Ultimately, the Court concludes that Davis's allegations are unsubstantiated, and thus, his motion should be denied.

I.  **Texas Disciplinary Rules of Professional Conduct**

Davis alleges that Henry and Crawford violated Disciplinary Rules 3.01, 3.04(b), 4.01(a), 4.04(a), and 4.04(b)(1).[1] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.01, 3.04(b), 4.01(a), 4.04(a), 4.04(b)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A. While the Disciplinary Rules are not the sole source for determining attorneys' professional standards in this Court, they provide a helpful guide here. Local Rule AT-2(a).

Disciplinary Rule 3.01 provides: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous." Comment Three to the Rule gives context to what constitutes a frivolous claim. Comment Three states in relevant part:

> A filing or contention is frivolous if it contains knowingly false statements of fact. It is not frivolous, however, merely because the facts have not been first substantiated fully or because the lawyer expects to develop vital evidence only by discovery. Neither is it frivolous even though the lawyer believes that the client's position ultimately may not prevail.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.01 cmt. 3. Pertinent here, "[t]he 'Terminology' section of the [D]isciplinary [R]ules defines [reasonable] to mean 'the conduct of a reasonably prudent and competent lawyer' and 'reasonably believes' to mean that 'the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.'" *Robins v.*

---

[1] Davis essentially argues that Crawford should be held vicariously liable for Henry's actions because Crawford "encouraged" Henry's conduct or at the very least "knowingly permitted" it (Dkt. #40 ¶ 9). *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 5.01(a) ("A lawyer shall be subject to discipline because of another lawyer's violation of these rules of professional conduct if . . . [t]he lawyer is a . . . supervising lawyer and orders, encourages, or knowingly permits the conduct involved[.]").

*Comm'n for Lawyer Discipline*, No. 01-19-00011-CV, 2020 WL 101921, at *9 (Tex. App.—Houston [1st Dist.] Jan. 9, 2020, pet. denied) (quoting TEX. DISCIPLINARY RULES PROF'L CONDUCT, *Terminology*).

Meanwhile, Rule 3.04 of the Disciplinary Rules addresses fairness in adjudicatory proceedings. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.04. Under Rule 3.04(b), lawyers "shall not . . . falsify evidence . . . [or] counsel or assist a witness to testify falsely . . . ." In a similar vein, Disciplinary Rule 4.01(a) bars attorneys from "knowingly mak[ing] a false statement of material fact" while representing a client. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.01(a).

Lastly, Disciplinary Rule 4.04 deals with lawyers' obligations with respect to third parties. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.04. Rule 4.04(a) provides that, in the course of representing a client, "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person . . . ." Meanwhile, Rule 4.04(b)(1) prohibits lawyers from presenting disciplinary charges "solely to gain an advantage in a civil matter[.]"

### II. The "Problematic" Statements Made by Henry & Whether Sanctions Are Warranted

According to Davis, Henry and Crawford violated each of the above Disciplinary Rules because Henry knowingly filed a complaint with two false statements, which Crawford encouraged or at least knowingly permitted. Moreover, Davis argues that, since Henry knew his bar complaint was completely frivolous, the bar grievance was a ploy by Henry and Crawford to divert Davis's time and resources away from the current case. The Court disagrees that any violation of the Disciplinary Rules occurred or that Henry and Crawford should be brought before the Court to explain their actions.

At bottom, Davis's motion is premised on the fact that Henry knowingly made two false statements of material fact in the bar complaint. Nowhere in Davis's motion does he actually identify those statements or explain why they were false. But based on his attached exhibits and

reply to Henry and Crawford's response, it appears the two statements at issue are (1) that he was told he could not go behind the dais during a meeting and (2) that he took a picture of attorney-client communications or work product. *See* (Dkt. #40, Exhibit 1 at pp. 1–5); (Dkt. #45). Thus, the relevant portions of Mr. Henry's complaint are as follows:

> On April 26, 2022, Mr. Davis attended a meeting of the Board. *At one point during the meeting, Mr. Davis attempted to approach the dais to consult with Mr. Green. President Dankel informed Mr. Davis that he was not allowed on the dais during a meeting . . . and insisted that Mr. Davis return to his place in the audience . . .* On May 31, 2022, Mr. Davis again attended a meeting of the Board. When all Board members except for Mr. Green had departed from the room for a closed session at around 9:22 a.m., *Mr. Davis approached the dais, despite previously being told he was not allowed there, and went behind the table to President Dankel's seat. Mr. Davis proceeded to take out his phone and take pictures of the documents on President Dankel's desk. These documents included an attorney-client communication and attorney work product*

(Dkt. #40, Exhibit 2 at p. 7) (emphasis added). There is no evidence, however, that Henry submitted his complaint knowing these two statements were false.

Turning to the first statement, for example, the Court does not find it as egregious as Davis thinks it is. Again, Henry stated that "President Dankel informed Mr. Davis [at the April 26 meeting] that he was not allowed on the dais during a meeting . . . and insisted that Mr. Davis return to his place in the audience" (Dkt. #40, Exhibit 2 at p. 7). Henry and Crawford submitted a video in response to Davis's pending motion that captures the encounter between Davis and Dankel (Dkt. #44 at p. 2) (providing URL link with video of MISD Board of Trustees meeting on April 26, 2022). The video clearly shows Dankel telling one of Davis's clients, Chad Green ("Green"),[2] that "Mr. Green you cannot invite your attorney [Davis] up during this time. This is the time for this attorney to speak. We've already mentioned that. Thank you." *April 26, 2022 School Board Meeting*, MCKINNEY INDEP. SCH. DIST.,

---
[2] Green is not a named party in this case, but it appears Davis represented Green in relation to an MISD investigation into Green's conduct while Green was an MISD board member (Dkt. #40, Exhibit 1 at pp. 2–3).

https://mckinneyisdtx.swagit.com/play/04272022-608 (last visited Feb. 2, 2023) (statement of Amy Dankel during "Discussion/Action" (Part 1 of 2) portion of meeting at 33:25 mark). Thus, on its face, Henry's statement appears to be true—Henry stated that Dankel told Davis he was not allowed at the dais during a meeting. That is exactly what happened. Accordingly, the Court fails to see how Henry's statement was "demonstrably false" as Davis claims.

Although Davis never explains in his motion why Henry's statement was false, the Court will consider an argument from an attached exhibit to the pending motion. One of Davis's attached exhibits is his response to the State Bar complaint where he tried to explain to the State Bar Grievance Committee why Henry's statement was so misleading (Dkt. #40, Exhibit 1). There, he argued that Henry knowingly made a false statement because his statement can be read to mean that Davis was not allowed to go to the dais at *any* meeting (Dkt. #40, Exhibit 1 at pp. 2–3). And, according to Davis, no warning like that was ever given—he was only informed that he could not go to the dais at the April 26 meeting.

But this argument does not show that Henry knowingly made a statement that was false. It goes towards the interpretation of the complaint itself. The fact of the matter is that Davis *was* warned he could not go to the dais at a meeting. While Davis minces over how someone might interpret Henry's complaint, that is not evidence whatsoever that Henry lied or concealed a material fact. Indeed, as explained above, the statement was based on events that happened. And there is no evidence before the Court that signals Henry's intent was to mislead the State Bar. In short, Davis asks the Court—without any evidence—to assign malintent into Henry's actions simply because one might interpret the bar complaint in a certain way. The Court will not do so.

8

Next, Davis also alleged in his response to the State Bar that Henry knowingly made a false statement when he said that Davis took a picture of an attorney-client communication and work product at the May 31 meeting (Dkt. #40, Exhibit 1 at pp. 3–5). As stated above, Henry alleged:

> On May 31, 2022, Mr. Davis again attended a meeting of the Board. When all Board members except for Mr. Green had departed from the room for a closed session at around 9:22 a.m., Mr. Davis approached the dais, despite previously being told he was not allowed there, and went behind the table to President Dankel's seat. *Mr. Davis proceeded to take out his phone and take pictures of the documents on President Dankel's desk. These documents included an attorney-client communication and attorney work product*

(Dkt. #40, Exhibit 2 at p. 7) (emphasis added). It is undisputed that most of these events actually occurred. Both parties agree that Davis attended the May 31 meeting, he went behind Dankel's seat, and he took pictures of documents on Dankel's desk. However, Davis maintains that he never took a picture of attorney-client communications and/or attorney work product, which Henry knew at the time he filed his complaint.

Davis photographed two documents at Dankel's desk, and one of the documents was a call to order ("Call to Order") (Dkt. #40, Exhibit 1 at pp. 4, 18). According to Davis, the Call to Order was read at the beginning of the May 31 meeting to comply with the Texas Open Meetings Act (Dkt. #40, Exhibit 1 at pp. 4, 18). The Call to Order contained the following language:

> I would like to call to order this meeting of the McKinney Independent School District Board of Trustees on Tuesday, May 31, 2022[,] and announce that a quorum of Board members is present, that the meeting has been duly called, and that notice of the meeting has been posted in accordance with the Texas Open Meetings Act, Texas Government Code Chapter § 551

(Dkt. #40, Exhibit 1 at p. 18).

Henry held the view that this document was an attorney-client communication or attorney work product because it was prepared by MISD's attorney for the president of MISD (Dankel) to read at a school-board meeting (Dkt. #44 at p. 3). Meanwhile, Davis disagreed, believing the

9

document was not attorney work product since Dankel read the document out loud at the meeting—thus essentially waiving any privilege that might have attached. *See* (Dkt. #40, Exhibit 1 at p. 4). Since Henry knew that Dankel waived any privilege, Davis asserted that Henry could not truthfully state that Davis took a picture of attorney work product or attorney-client communications (Dkt. #40, Exhibit 1 at p. 3). There are two fundamental flaws with Davis's allegation though.

One, Davis misunderstands the concept of waiver and how that affects the characterization of attorney-client communications or work product. A party can waive the attorney-client or work-product privilege by disclosing information to third parties, but waiver does not mean those privileges never attached at all. *See United States v. Rodgers*, No. 4:20-CR-00358, 2022 WL 1074013, at *8 (E.D. Tex. Apr. 8, 2022) ("Disclosure of work product can *result in waiver of the work product protection* . . . .") (emphasis added) (citation omitted); *S.E.C. v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006) ("For example, *disclosure of attorney-client communications* to a third party lacking a common legal interest *will result in a waiver of the attorney-client privilege*.") (emphasis added) (citations omitted). In other words, work-product materials or attorney-client communications are still technically attorney-client communications or work product even if they are disclosed to third parties: it just means the potential protections that come with those materials no longer apply. *See Rodgers*, 2022 WL 1074013, at *8; *Brady*, 238 F.R.D. at 439. So, just because Dankel might have waived any privilege by reading the Call to Order at the May 31 meeting, that does not necessarily mean that Henry lied when he classified the document as an attorney-client communication or work product. In fact, it seems this very point was mentioned in Henry's grievance to the State Bar, as he stated: "Regardless of whether privileged information was actually

intercepted, Mr. Davis's intentional dishonest conduct violated the [Disciplinary Rules] to a degree that warrants corrective action" (Dkt. #40, Exhibit 2 at p. 7).

Second, and more importantly, Davis seems to think that—because he might have shown the Call to Order is not work product or an attorney-client communication—this means that Henry violated the Disciplinary Rules. But the Disciplinary Rules do not punish attorneys for making a statement that turns out being wrong. Rather, the relevant inquiry for attorney discipline is whether an attorney made a statement that he *knew* was false at the time he made it. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.01 cmt. 3 ("A filing or contention is frivolous if it contains *knowingly* false statements of fact."); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.01(a) ("[A] lawyer shall not *knowingly* . . . make a false statement of material fact . . . ."). Here, there is no evidence that Henry knew the Call to Order was not work product or an attorney-client communication. The sole evidence Davis does produce supports the opposite conclusion. An exhibit to Davis's pending motion shows an email exchange between himself and Henry after Henry filed the grievance with the State Bar (Dkt. #40, Exhibit 3). During the exchange, Davis accused Henry of misleading the State Bar because none of the documents he photographed were attorney-client communications or work product (Dkt. #40, Exhibit 3 at p. 8) (providing Davis's response to the State Bar grievance where Davis accuses Henry of making a false statement). In response, Henry disagreed that any of his statements were false, telling Davis that that he "[did not] think the statements in the grievance [were] false—[he and Davis] just seem to have a good-faith disagreement about the facts here" (Dkt. #40, Exhibit 3 at p. 6). Therefore, based on the record, Davis and Henry may have disagreed about how to classify the Call to Order at issue. But Henry never admitted that the Call to Order had no protection whatsoever. The Call to Order was prepared by an MISD attorney for MISD's

11

president, Dankel, so there is a possibility that Henry thought some protection might attach.[3] Indeed, it appears that is still Henry's exact position. *See* (Dkt. #44 at p. 3) (responding to Davis's motion and stating that "the Call to Order was indeed attorney work product" even though that privilege might now be waived). Therefore, the evidence does not support Davis's conclusion that Henry knew the Call to Order was never work product or an attorney-client communication.

To summarize, Davis's allegations against Henry and Crawford come down to two statements that he believes were not an accurate portrayal of what happened at a pair of MISD meetings. And maybe Davis is right in some sense that Henry did not get the facts completely correct. But getting the facts wrong is not what the relevant Disciplinary Rules are concerned with. *See, e.g.*, TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.01, 4.01(a). The Rules target attorneys that *knowingly* make false statements. Davis is missing any evidence that shows Henry did that. Therefore, the Court will not order Henry and Crawford to show cause.

Moreover, it is worth noting that the other Disciplinary Rules Davis cites are not implicated based on the evidence here. For example, Disciplinary Rule 3.04(b) prohibits attorneys from falsifying evidence or counseling witnesses to testify falsely. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.04(b). Nowhere in the record is there an indication that Henry or Crawford asked anyone to make a false statement or that Henry or Crawford falsified any evidence. Meanwhile, Disciplinary Rule 4.04 states that attorneys cannot use means that have no other purpose than to burden or harass another person. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.04(a). Rule

---

[3] To be clear, the Court is not suggesting the Call to Order in fact qualifies as an attorney-client communication or work product. In fact, the work-product privilege would seem not to apply in this situation because the document was not prepared in anticipation of litigation—one of the touchstones to claiming work-product protection. *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) ("[The work-product doctrine] protects materials prepared *in anticipation of litigation*, whether those materials were prepared by the attorney or by agents of the attorney.") (emphasis added). And, the Court is also skeptical that the document would even be subject to attorney-client privilege. But, as discussed, it does not matter for the Court's analysis whether or not the document actually could qualify under either protection. It only matters whether or not *Henry knew* that neither privilege applied.

4.04 also bars attorneys from filing a grievance to gain an advantage in a civil matter. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.04(b). While Henry's complaint was ultimately dismissed by the State Bar, Davis has not provided any evidence that Henry and Crawford used the grievance system in such a nefarious way. His *ipse dixit* that Henry and Crawford "obviously" used the grievance system to harass him is not evidence of anything. It is an allegation—no more, no less. And, candidly, Davis has failed to provide concrete evidence to back his claim. There are no communications where Henry admits his complaint was taken in bad faith or even that he agreed with Davis's version of events. Quite the opposite actually. As stated above, Henry has maintained his side of the story and felt he had a disagreement with Davis about what actually happened. Thus, the Court does not see any merit to Davis's claim that Henry and Crawford were trying to gain a leg up in this case by distracting him with a frivolous complaint.

Allegations against an attorney, like the ones made here, are not to be taken lightly. However, the Court expects attorneys to back up their claims when they allege another attorney went to the lengths of falsifying evidence or filed a grievance to gain an advantage in civil litigation. The record here simply does not support any of the allegations that Davis laid out in his motion. In fact, just as Davis believes Henry and Crawford sought to tarnish his reputation by filing a frivolous complaint, Davis has essentially done the same with his motion by accusing Henry and Crawford of acting in bad faith without any concrete evidence to substantiate that assertion. Therefore, given the lack of evidence to support Davis's allegations, the Court denies his motion.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Order to Show Cause (Dkt. #40) is hereby **DENIED.**

**IT IS SO ORDERED.**

SIGNED this 6th day of February, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE