# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

ANDREA COLLARD GONZALES,　§
KEVIN WHITT, DYMPHNA FERREL,　§
and BRITTANY HENDRICKSON,　§　　Civil Action No.  4:22-cv-416
　§　　Judge Mazzant
　§
*Plaintiffs,*　§
　§
v.　§
　§
AMY   DANKEL,   CHERRIE   SILAS,　§
ROBERT   MONTGOMERY,   FARREL　§
RITCHIE, and BRYANT BAILEY,　§
　§
*Defendants.*　§

## ORDER AND MEMORANDUM OPINION

Pending before the Court is Defendants Amy Dankel and Robert Montgomery's Motion for Summary Judgment on Qualified Immunity (Dkt. #31). Having considered the motion and the relevant pleadings, the Court finds that Defendants' motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiffs Kevin Whitt ("Whitt"), Dymphna Ferrel ("Ferrel"), Andrea Collard Gonzales ("Gonzales") and Brittany Hendrickson ("Hendrickson") (collectively, "Plaintiffs") attended the McKinney Independent School District ("MISD") Board of Trustees (the "Board") meeting on April 26, 2022, at the MISD Community Event Center (Dkt. #22 at p. 3). Plaintiffs attended the meeting because they had learned that certain books in the MISD school libraries allegedly contained sexually explicit material, and they wished to express their view that the books should be removed from MISD school libraries (Dkt. #22 at p. 4).

Defendant Amy Dankel ("Dankel"), President of the MISD Board, opened the April 26

Board meeting with the following statement, in relevant part:

> I would like to welcome everyone to the McKinney ISD monthly board meeting. As a board, we would like to begin by establishing a few expectations. In light of issues that we have experienced over the last several board meetings, let me start by saying that we understand that many of you come to this meeting for different reasons. Some of you are here for student recognition, some of you are here for public comment, and others are here to learn more about the topics on the board agenda. Regardless of your reason for being here, we want you to know – we want you to feel welcome. I mean, we have said all along many school districts suffer from apathy of the community and parents. And that certainly is not the case in McKinney. We have a long-standing tradition in McKinney ISD of respect and order at our school board meetings, regardless of how contentious or emotional a topic might have been. In recent months, however, a demonstration of self-control and decorum at meetings has deteriorated. Over the past five months, multiple attendees have been escorted out of the meeting for disruptive and inappropriate behavior.
> …
> Individuals have interrupted speakers, made rude comments to others in attendance, and even accosted students and staff and parents.
> …
> Therefore, please be advised that decorum and order will be maintained during the meeting. This includes enforcement of the Texas Penal Code and the Texas Education Code sections which permit law enforcement to remove individuals who disrupt a public meeting.
>
> Consider this your only warning.
> …
> The individual will be escorted out, issued a criminal trespass citation, and will no longer be permitted on MISD property.
> …
> The public comment of the meeting should be a place where students and community members feel safe and speak on diverse topics and opinions, absent of ridicule – ridicule and intimidation. If you would like to show your support for a speaker during public input, simply raise your hand after they have spoken.
> …
> To be clear, outbursts or comments made in the audience during public comment and during the meeting are simply not permitted. Holding side conversations during the meeting, which is disruptive to other attendees and the board, is not permitted. All of these are considered a disruption of the meeting and will result in being removed and issued a citation. We're confident that everyone will respect these

expectations. And if you feel you may struggle to do so, now would be the time to exit, because we're about to start public comment.

(Dkt. #33, Exhibit 1, Exhibit C).

Dankel designated Defendant Robert Montgomery ("Montgomery"), the MISD Director of Safety, Security, and Transportation, to "point out which members of the crowd were violating the rules she set so that the McKinney Police would know who to remove from the meeting" (Dkt. #22 at p. 4). Plaintiffs allege that, "prior to the meeting, Dankel and Montgomery had met with the McKinney Chief of Police, Greg Conley, regarding police enforcement of her rules" (Dkt. #22 at p. 4).

According to Plaintiffs, those at the Board meeting wearing the color green supported the removal of the books, while those wearing blue opposed removal of the books (Dkt. #22 at p. 5). Plaintiffs contend that the opposing views of the "green group" and the "blue group" were apparent from the content of their speech and were generally known by Defendants (Dkt. #22 at p. 5). Plaintiffs allege that there were individuals in both groups who violated the rules for the Board meeting set forth by Dankel (*see* Dkt. #22 at p. 5). Even so, Plaintiffs contend that "Montgomery only pointed out individuals in the crowd for removal, who were wearing green, or who were otherwise known to oppose the books" (Dkt. #22 at p. 5–6). Plaintiffs further contend that no individuals wearing blue or who were otherwise known to support the books at issue were identified to be removed, "despite displaying similar behavior to those wearing green" (Dkt. #22 at p. 6).

## A. Plaintiff Whitt

Plaintiffs allege that during the public comment section of the meeting, a woman read an excerpt from one of the books at issue in the MISD school libraries (Dkt. #22 at p. 6). Plaintiffs state that "[a]fter the woman was finished reading and her time was up, Whitt said the word

'disgusting.' Upon hearing Whitt's comment, Dankel stopped the meeting and asked Montgomery to point out who made the comment. Montgomery pointed out Whitt, and Dankel instructed the McKinney Police to remove Whitt from the meeting" (Dkt. #22 at p. 6). Sergeant Ritchie and Officer Bailey removed Whitt from the meeting (Dkt. #22 at p. 6).

When Whitt attempted to attend the next MISD Board meeting on May 17, 2022, Sergeant Ritchie issued Whitt a criminal trespass citation (Dkt. #22 at p. 10).

### B. Plaintiff Ferrel

Plaintiffs allege that Sergeant Ritchie and Officer Bailey "confronted Ferrel and instructed her to leave" (Dkt. #22 at p. 8). Plaintiffs further allege that, despite Ferrel protesting that she had done nothing wrong, Sergeant Ritchie and Officer Bailey escorted her from the Board meeting (Dkt. #22 at p. 8). Officer Silas was not alleged to be involved (*See* Dkt. #22).

Plaintiffs' Exhibit G shows that, after a man was removed from the Board meeting for clapping, Ferrel stated "He clapped, that was his crime" (Dkt. #42, Exhibit G at 1:05). Montgomery identified Ferrel as having disrupted the meeting and Sergeant Ritchie removed Ferrel from the Board meeting (Dkt. #42, Exhibit G at 1:16, 1:33). Officer Bailey assisted Sergeant Ritchie in removing Ferrel from the Board meeting (Dkt. #22 at p. 8).

On May 17, 2022, Ferrel attended the next MISD Board meeting without issue (Dkt. #22 at p. 11). However, when she attended the special session on May 31, 2022, Plaintiffs allege that a McKinney police officer instructed her to leave because she was being issued a criminal trespass citation (Dkt. #22 at p. 11).

### C.  Plaintiff Gonzales

Plaintiffs allege that Ferrel appeared nervous after Officer Silas approached her, so Gonzales "made a statement to her in front of Officer Silas regarding First Amendment constitutional rights and rights conferred to the public by the Texas Open Meetings Act" (Dkt. #22 at p. 7). Plaintiffs further allege that Gonzales asked Officer Silas why she was approaching her and that Gonzales informed Officer Silas that she was there to speak at the meeting (Dkt. #22 at p. 7).  According to Plaintiffs, Gonzales showed Officer Silas her speaker form, and Officer Silas asked her to leave (Dkt. #22 at p. 7–8). Gonzales protested that she had done nothing wrong and refused to leave, and at that point, Officer Silas removed Gonzales from the Board meeting (Dkt. #22 at p. 8).

Plaintiffs' Exhibit G depicts Gonzales stating that "she's not interested in contracting with you," and "I'm her constitutional advocate." (Dkt. #42, Exhibit G at 2:18). Plaintiffs' Exhibit G then shows Montgomery pointing out Gonzales to be escorted from the Board meeting (Dkt. #42, Exhibit G at 2:22). At that point, Officer Silas removed Gonzales from the Board meeting (Dkt. #42, Exhibit G at 2:35).

According to Plaintiffs, Gonzales has not attempted to return to a Board meeting (Dkt. #22 at p. 11).

### D.  Plaintiff Hendrickson

Plaintiffs allege that Hendrickson, despite filling out the required form and being assured by the Assistant Superintendent of Student Activities, Health, and Safety for MISD that it was "perfect," was not allowed to speak during the public comment segment (Dkt. #22 at p. 9). At the beginning of the public comment segment, Dankel explained that six people would not be allowed

to speak because they did not fill out the entire form (Dkt. #22 at p. 9). Hendrickson was one of those who did not fill out her form correctly, so she was not allowed to speak (Dkt. #22 at p. 10). According to Hendrickson, all six forms that were rejected were filled out by individuals whom she knows to share her viewpoint on the books (Dkt. #38, Exhibit C). Hendrickson further claims that Dankel was aware that she opposed the books because she had expressed her viewpoint at a prior MISD board meeting (Dkt. #38, Exhibit C).

Plaintiffs allege that a review of the carbon copy of Hendrickson's form indeed showed that "she had not checked a box on the form to indicate whether she was a student, staff member, MISD resident, and/or MISD parent/guardian" (Dkt. #22 at p. 10; Dkt. #31, Exhibit E). Plaintiffs further allege that witnesses observed MISD staff "actively assisting at least one blue-shirted individual in curing defects on the speaker form" but did not "assist Hendrickson or any of the other five individuals in curing defects on their forms" (Dkt. #22 at p. 10). Plaintiffs do not allege that Montgomery or McKinney Officers removed Hendrickson from the Board meeting or otherwise contacted Hendrickson (*See* Dkt. #22).

***

On September 9, 2022, Dankel and Montgomery (collectively, "Defendants") filed their Motion for Summary Judgment on Qualified Immunity (Dkt. #31). On September 29, 2022, Plaintiffs filed their Response (Dkt. #38). On October 6, 2022, Defendants filed their Reply (Dkt. #39). And on October 13, 2022, Plaintiffs filed their Sur-reply (Dkt. #43).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden.  Rather,

the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiffs allege that the Defendants in this lawsuit acted in concert and conspired to deprive Plaintiffs of their First Amendment rights in violation of 42 U.S.C. § 1983 (Dkt. #22 at p. 11). Specifically, Plaintiffs allege that the Defendants engaged in viewpoint discrimination by selectively enforcing rules of decorum set by Defendant Dankel (*see* Dkt. #22 at pp. 12–14). Defendants Dankel and Montgomery move for summary judgment on the grounds of qualified immunity (Dkt. #31 at pp. 1, 20). In their response to the motion, Plaintiffs move for a continuance to conduct additional discovery under Rule 56(d) (Dkt. #38 at p. 3). FED. R. CIV. P. 56(d).

## I.    Qualified Immunity

Qualified immunity is a defense available to state officials sued for constitutional violations pursuant to 42 U.S.C. § 1983. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). Qualified immunity shields government officials from liability for civil damages so long as their conduct does not violate clearly established rights. *Id.* The burden is on the plaintiff seeking to defeat qualified immunity to show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was

objectively reasonable." *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). The Court may consider the second analytical prong first. *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).

With respect to the second prong, a defendant is entitled to qualified immunity when his conduct was objectively reasonable in light of clearly established law at the time of the conduct at issue. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1184 (5th Cir. 1990) (overruled on other grounds by *Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)); *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) ("A police officer is entitled to claim the cloak of qualified immunity 'unless it is shown that, at the time of the incident, he violated a clearly established constitutional right.'" (citations omitted)). If the Court determines that Defendants Dankel and Montgomery's conduct did not violate clearly established law, then qualified immunity will shield them from civil liability.

Defendants argue that Dankel's enacting and enforcement of meeting rules to maintain decorum and order without regard to viewpoint was not objectively unreasonable because "[t]here is a significant governmental interest in conducting orderly, efficient meetings of public bodies" (Dkt. #31 at p. 18) (quoting *Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004)). Plaintiffs argue in response that Defendants' argument is a straw man misrepresenting the nature of Plaintiffs' claims as complaining about whether Dankel's rules of decorum were facially neutral (*see* Dkt. #38 at pp. 4–5). Indeed, Plaintiffs concede that Dankel's rules were facially neutral (Dkt. #38 at p. 5). But Plaintiffs contend that Defendants unequally applied those rules to prevent individuals who opposed the availability of sexually explicit books in MISD school libraries from speaking at the April meeting or at future MISD board meetings (Dkt. #38 at p. 5).

The Court agrees that Plaintiffs have indeed asserted as-applied First Amendment claims, rather than facial challenges. Plaintiffs do not contend that the rules of decorum set by Dankel were facially unconstitutional. Instead, Plaintiffs attack the manner in which Defendants applied the rules. Thus, with respect to the claims of every Plaintiff save perhaps Hendrickson, Defendants' sole reliance on the school board's interest in maintaining order and preventing boisterous conduct at public meetings, to justify qualified immunity, is misplaced.

It is true that, depending on the type of public forum, restrictions on speech must be justified by some degree of governmental interest. *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010) (describing the differences between designated and limited public forums and the respective standards that each impose on government speech restrictions). And neither side disputes that Defendants had a legitimate interest in setting rules of decorum to prevent disruption from occurring at the school board meeting. The decisive issue, however, is whether Defendants' enforcement of those rules was motivated by a particular viewpoint in violation of the First Amendment, and, if so, whether such conduct was objectively reasonable in light of clearly established law. *See Heaney v. Roberts*, 846 F.3d 795, 802–03 (5th Cir. 2017).

### A.  The MISD Board Meeting is a Limited Public Forum.

To determine whether a clearly established right existed and whether First Amendment violations occurred, the Court must first decide what category of forum the public comment portion of a school district board meeting falls into. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344 (5th Cir. 2001) ("[O]ur determination of the character of the forum in which expression was regulated shapes our determination whether a clearly established right existed and our ultimate conclusion whether a constitutional violation occurred".). Neither side directly addresses this

issue in the briefing for this motion. Plaintiffs appear to categorize the school board meeting as a non-public forum (*see* Dkt. #38 at p. 13), while Defendants do not brief the issue whatsoever.

Despite this lack of clarity, the Court finds that the MISD Board meeting—and public comment portion—is properly categorized as a limited public forum. *See Fairchild*, 597 F.3d at 759 ("[T]he Board meeting here fits the hornbook definition of a limited—not designated—public forum, in which 'the State is not required to and does not allow persons to engage in every type of speech.'"); *see also Wilson v. N. E. Indep. Sch. Dist.*, No. 5:14-CV-140-RP, 2015 WL 13716013, at *4 (W.D. Tex. Sept. 30, 2015) (finding that a school district's board meetings were limited public forums because the school board could restrict the subject matter of the sessions to "issues that involve the school system and its governance"). Accordingly, MISD could lawfully restrict speech at the school board meeting, as long as the regulation "(1) [did] not discriminate against speech on the basis of viewpoint and (2) [was] reasonable in light of the purpose served by the forum." *See Fairchild*, 597 F.3d at 758 (quoting *Chiu*, 260 F.3d at 346).

## B.  Whether First Amendment Violations Occurred.

Viewing the evidence in a light most favorable to Plaintiffs, the Court must next decide whether the challenged conduct constitutes viewpoint discrimination in violation of the First Amendment. The Court will analyze the challenged conduct with respect to Plaintiff Hendrickson's § 1983 claims separately from Plaintiffs Whitt, Gonzales, and Ferrel's § 1983 claims.

Viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Heaney*, 846 F.3d at 802 (5th Cir. 2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)). The

government can restrict access to limited public forums "as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *See Chiu*, 260 F.3d at 347 (quoting *Ark. Educ. Tv Comm'n v. Forbes*, 523 U.S. 666, 677–78 (1998)). Whether a restriction is enforced against a person because of his or her viewpoint turns upon the facts of each case. *See Heaney*, 846 F.3d at 802 (5th Cir. 2017) ("Because [the plaintiff] was not silenced for violating a reasonable restriction, the First Amendment claim turns on [the defendant's] motive or intent in silencing and ejecting [the plaintiff] from the meeting."); *Chiu*, 260 F.3d at 352 (finding that a genuine issue of material fact existed as to school officials' motivation for banning the plaintiff from distributing pamphlet materials); *see also Heaney v. Roberts*, 147 F. Supp. 3d 600, 605 (E.D. La. 2015), *aff'd in part, dismissed in part*, 846 F.3d 795 (5th Cir. 2017).

### 1. Plaintiffs Whitt, Gonzales, and Ferrel's § 1983 Claims

Defendants contend that the video evidence conclusively shows that no viewpoint discrimination occurred because Plaintiffs Whitt, Gonzales, and Ferrel can be seen wearing clothing of different colors (*see* Dkt. #39 at p. 9). Nebulous at best, the contention seems to be that Defendants fairly applied the rules of decorum at the meeting because the rules were applied irrespective of the color of a person's clothing and, hence, irrespective of any viewpoint associated with that color. But Defendants' position ultimately fails because the video evidence alone does not allow the Court to resolve the subjective question of intent.

The Court notes that there are no factual disputes over Defendants' observable conduct, as it pertains to the First Amendment claims, because the videos clearly show the actions taken by each Defendant at the MISD Board meeting on April 26, 2022. The Court, however, cannot

decisively discern from the videos each Defendant's respective motive in ejecting the Plaintiffs from the school board meeting. If Defendant Dankel directed Plaintiff Whitt's removal from the meeting not because of Plaintiff Whitt's side remark but because of his opinion on the presence of sexually explicit books in MISD libraries, then Plaintiff Whitt suffered a First Amendment violation. Likewise, if Defendant Montgomery directed the removal of Plaintiffs Ferrel and Gonzales not because of their disruptive conduct but because of their viewpoints opposing the books, then they too suffered constitutional violations.

By the same token, it is not beyond debate that each Defendant was motivated only by perceivably disruptive behavior in electing to enforce the rules of decorum set at the outset of the meeting. But the Court is not the rightful arbiter of such factual conflict. Motive and intent are questions of fact that should be resolved by a jury. *See Heaney*, 147 F. Supp. 3d at 606 (finding a genuine issue of material fact existed as to whether the defendant acted on an improper motive in silencing and ejecting the plaintiff from a city council meeting); *see also Freedom From Religion Found., Inc. v. Abbott*, No. A-16-CA-00233-SS, 2017 WL 4582804, at *10 (W.D. Tex. Oct. 13, 2017) (finding a genuine issue of material fact existed as to Governor Abbott's motive in requesting the removal of an exhibit from the Texas Capital building).

Furthermore, Defendants' position ignores that a reasonable jury could infer that Defendants selectively enforced the rules of decorum against individuals who opposed the availability of sexually explicit books in MISD libraries. For example, multiple incidents of clapping and shouts of praise or protest can be seen or heard throughout the meeting that Defendant Dankel appears to ignore or disregard without explanation (*see generally* Dkt. #31, Exhibit J). During one such incident, applause erupts after Defendant Dankel reveals to the crowd that a certain book is

not available in MISD libraries, and neither Defendant appears to direct the removal of any person. Members of the audience then begin to protest the apparent lack of enforcement. In response, Defendant Dankel, seemingly to pacify the situation, explains to the crowd that the people who applauded did not clap when the speaker talked (*see* Dkt. #31, Exhibit J at 48:15–49:30; Dkt. #38, Exhibit F). Because the rules of decorum prohibited all audible outbursts or comments made in the audience during the meeting (*see* Dkt. #31, Exhibit 3 at pp. 5–6), these incidents of apparent inaction are in stark contrast to Defendant Dankel's decision to have Plaintiff Whitt removed, which was prompted by his side comment of "disgusting" after a speaker had finished reading aloud from a sexually explicit book. Therefore, a reasonable jury could find that Defendant Dankel acted with a discriminatory purpose when choosing to enforce the rules against some outbursts but not others. In the end, it is the jury's role to assess the credibility of Defendants in explaining the reasons behind their actions. *See Heaney*, 147 F. Supp. 3d at 607–08 ("In the end the question becomes one of [the defendant's] credibility in explaining his reasons for the actions that he took.").

The Court concludes that genuine issues of material fact exist as to each Defendant's motivations that cannot be resolved on summary judgment. Accordingly, the Court cannot decide the first prong of qualified immunity on Plaintiffs Whitt, Gonzales, and Ferrel's § 1983 claims until such issues are resolved at trial. *See Heaney*, 846 F.3d at 802 n.3 (5th Cir. 2017) ("While [the defendant] is correct that qualified immunity presents a question of law to be determined by the court, 'when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.'").

In a similar vein, the Court cannot decide whether Defendants are entitled to qualified immunity on Plaintiffs Whitt, Gonzales, and Ferrel's § 1983 conspiracy claims. The conspiracy claims are not actionable if the state action which is alleged to have caused harm was objectively reasonable. *See Morrow v. Washington*, 672 F. App'x 351, 354 (5th Cir. 2016) ("In the qualified immunity context, courts must 'first . . . determine the objective reasonableness of the state action . . . [o]nly if that action was not objectively reasonable should the court then 'look to whether the officer's actions were taken pursuant to a conspiracy.'"). However, because the Court has determined that Defendants' alleged conduct would be objectively *unreasonable* if they acted with improper motive—which hinges on issues of fact—the conspiracy claims are currently actionable as to Defendants. *See id.*

### 2.  Plaintiff Hendrickson's § 1983 Claims

The Court finds that Defendants are entitled to qualified immunity on Plaintiff Hendrickson's § 1983 claims because, unlike the other Plaintiffs, Plaintiff Hendrickson has not shown that either Defendant caused her to suffer a First Amendment violation or that a genuine issue of material fact exists on the matter.

There is no evidence suggesting that Defendants selectively enforced the MISD public comment procedures against Plaintiff Hendrickson. The evidence shows only that Plaintiff Hendrickson was denied the opportunity to speak at the MISD Board meeting because she failed to fill out her public comment card in its entirety. The MISD Board's public comment procedures require that public comment cards be "completed in their entirety with accurate and truthful information" (Dkt. #10, Exhibit 2). No party disputes the reasonableness of this restriction. Because Plaintiff Hendrickson violated a reasonable restriction, there is no constitutional violation

where she suffered a natural consequence of its nondiscriminatory application. *See Heaney*, 846 F.3d at 802 (5th Cir. 2017) ("If [the plaintiff] were to have violated a reasonable restriction, such as a topic or time constraint, there would be no constitutional violation.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998). There is no evidence and Plaintiff Hendrickson does not allege that other similarly situated individuals (e.g., those who incorrectly filled out the public comment card), who had an opposing viewpoint in favor of the books, were permitted to speak despite similar violations of the public comment procedures. The absence of disparate treatment by either Defendant renders Plaintiff Hendrickson's allegations of viewpoint discrimination impotent in these circumstances. It stands to reason that Plaintiff Hendrickson would have been prevented from speaking even in the absence of any improper motive because she did not comply with the public comment procedures. *See id.*; *see also Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 435 (6th Cir. 2009) ("No violation occurs when the same result would have occurred in the absence of any illegitimate motive."). Accordingly, Plaintiff Hendrickson has failed to raise a genuine issue of material fact, and so Defendants are entitled to qualified immunity on her § 1983 claims.

Defendants' qualified immunity also extends to Plaintiff Hendrickson's § 1983 conspiracy claims because there is not an actual violation of § 1983 based on the evidence or Plaintiff Hendrickson's alleged version of the facts. *See Morrow*, 672 F. App'x at 354 ("A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'").

**C.  The Right to be Free from Viewpoint Discrimination is Clearly Established.**

With respect to Plaintiffs Whitt, Gonzales, and Ferrel's § 1983 claims, the Court must now decide whether the constitutional right at issue was clearly established at the time of Defendants' alleged conduct. Defendants argue that the alleged unlawfulness of their conduct is not beyond debate because Plaintiffs cannot identify a case "particularized" to the facts of this case (Dkt. #31 at pp. 19–20). In response, Plaintiffs contend that a case directly on point is not required and that the Fifth Circuit has held, since at least 1989, that the "government may reasonably limit speech in a non-public forum as long as the limitation is 'not an effort to suppress expression because public officials oppose the speaker's view'" (Dkt. #38 at p. 13) (citing *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 116 (5th Cir. 1992). Plaintiffs further contend that two cases outside the Fifth Circuit, with nearly identical facts to this case, dispose of the issue in their favor.

The Fifth Circuit has held that "[i]t is beyond debate that the law prohibits viewpoint discrimination in a limited public forum." *Heaney*, 846 F.3d at 801–02 (5th Cir. 2017); *see also Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) (holding that in a limited public forum "restriction[s] must not discriminate against speech on the basis of viewpoint"). Accordingly, if either Defendant acted with an improper motive, he or she violated that respective Plaintiff's clearly established constitutional right to be free from viewpoint discrimination in a limited public forum. *See Heaney*, 846 F.3d at 802 (5th Cir. 2017) ("If [the defendant] acted with improper motive, he violated [the plaintiff's] clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum").

A reasonable government official in either Defendant's position would have known that it would be unlawful under the First Amendment to enforce the meeting's rules of decorum more

17

harshly against Plaintiffs based on the particular viewpoint that they were expressing. *See Heaney*, 147 F. Supp. 3d at 608 ("It is beyond cavil that a reasonable government official in [the defendant's] position would have known that it would be impermissible under the First Amendment to prevent [the plaintiff] from speaking and to eject him from the meeting based on the message that he was conveying."). A case directly on point is not necessary. *See Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). And the Court believes that *Heaney*, among other cases cited in this opinion, constitute more than "adequate authority at a sufficiently high level of specificity" to put each Defendant on notice that viewpoint discrimination in a limited public forum is unlawful.[1] *See id.*

Accordingly, as discussed above, Defendants are not entitled to qualified immunity in light of the genuine issues of material fact surrounding Defendants' subjective motives. *See supra* Part I.B.1.

## II.   **Plaintiffs' motions for additional discovery under Rule 56(d) are denied.**

In its order granting Defendant's Motion to Stay and/or Limit Discovery (Dkt. #51), the Court indicated it would "take up Plaintiffs' request for discovery under Rule 56(d) in its decision on the summary-judgment motions because Plaintiffs have alternatively requested relief under Rule 56(d) in their responses to those motions" (Dkt. #51 at p. 3). Specifically, Plaintiffs move for a continuance to conduct additional discovery on the issue of qualified immunity under Rule 56(d) if their evidence is not sufficient to defeat summary judgment (Dkt. #38 at p. 3).

---

[1] Given the Court's finding that the constitutional right at issue was clearly established, the Court need not address the parties' remaining arguments as to the cases identified by Plaintiffs outside the Fifth Circuit.

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

Rule 56(d) "discovery motions are broadly favored and should be liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (internal quotation marks omitted). The Court generally should grant "a continuance for additional discovery if [the nonmovant]: (i) requested extended discovery prior to [the Court's] ruling on summary judgment; (ii) placed [the Court] on notice that further discovery pertaining to the summary judgment motion was being sought; and (iii) demonstrated to [the Court] with reasonable specificity how the requested discovery pertained to the pending motion." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) (citations omitted) (construing former FED. R. CIV. P. 56(f)).

 "To succeed on a Rule 56(d) motion, . . . the party requesting discovery must provide an affidavit or declaration in support of the request that 'state[s] with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials w[ill] assist him in opposing summary judgment.'" *Whitener v. Pliva, Inc.*, 606 Fed. App'x 762, 765 (5th Cir. 2015) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993)). And the nonmovant must "present specific facts explaining his inability to make a substantive response . . . and specifically demonstrating how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact" and defeat summary judgment. *Washington*, 901 F.2d at 1285 (internal quotations and citations omitted) (construing former FED. R. CIV. P. 56(f)). The nonmovant "may not simply rely on vague

19

assertions that additional discovery will produce needed, but unspecified, facts." *Raby*, 600 F.3d at 561 (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5thCir. 1980)). "Rather, a request to stay summary judgment under [Rule 56(d)] must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* (quoting *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).

The party requesting the additional discovery or extension also must show that relevant discovery has been diligently pursued. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). The Court may properly deny a Rule 56(d) motion where the movant has "not pursued discovery diligently enough to warrant relief under Rule 56(d)." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (internal quotation marks omitted). Further, "[i]f it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby*, 600 F.3d at 561 (quoting *Access Telecom.*, 197 F.3d at 720).

The Court may also properly deny a Rule 56(d) where "the party filing the Rule 56(d) motion has failed to identify sufficiently specific or material evidence to affect a summary judgment ruling." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016); *accord Mendez v. Poitevent*, 823 F.3d 326, 337 (5th Cir. 2016) (affirming denial of Rule 56(d) motion where Plaintiffs "vaguely assert[ed] . . . that deposing the witnesses would have permitted [plaintiffs] to further discover the facts from the witnesses," and "did not demonstrate below how the additional discovery [would]

likely create a genuine issue of material fact . . . "[i]nstead, the result of the discovery they sought was wholly speculative" (citations and internal quotation marks omitted)).

Here, the Court finds that Plaintiff Hendrickson has not met her burden warranting a continuance under Rule 56(d) with respect to her § 1983 claims against Defendants. As previously explained, Defendants are entitled to qualified immunity on Plaintiff Hendrickson's § 1983 claims, and the Court is not convinced that further discovery will provide evidence creating a genuine issue of material fact as to Defendants' actions with respect to her claims. *See supra* Part I.B.2. Thus, Plaintiff Hendrickson's Rule 56(d) motion should denied. As for the remaining Plaintiffs' Rule 56(d) motions, the Court finds that they should be denied as moot given the denial of Defendants' motion on qualified immunity. *See supra* Part I.B.1.

## CONCLUSION

It is therefore **ORDERED** that Defendants Amy Dankel and Robert Montgomery's Motion for Summary Judgment on Qualified Immunity (Dkt. #31) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff Brittany Hendrickson's § 1983 claims and § 1983 conspiracy claims against Defendants are **DISMISSED with PREJUDICE**.

It is further **ORDERED** that Plaintiff Brittany Hendrickson's Rule 56(d) motion (Dkt. #38) is **DENIED**.

It is further **ORDERED** that Plaintiffs Kevin Whitt, Dymphna Ferrel, and Andrea Collard Gonzales's Rule 56(d) motions (Dkt. #38) are **DENIED as moot**.

**IT IS SO ORDERED**.

**SIGNED this 12th day of June, 2024.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE