# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

ANDREA COLLARD GONZALES,
KEVIN WHITT, DYMPHNA FERREL,
and BRITTANY HENDRICKSON,

    *Plaintiffs,*

v.

AMY DANKEL, CHERRIE SILAS,
ROBERT MONTGOMERY, FARREL
RITCHIE, and BRYANT BAILEY,

    *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No.  4:22-cv-416
Judge Mazzant

## ORDER AND MEMORANDUM OPINION

Pending before the Court is Defendants McKinney Officers Silas, Bailey, and Ritchie's Second Motion and Brief for Summary Judgment (Dkt. #33). Having considered the motion and the relevant pleadings, the Court finds that Defendants' motion should be **GRANTED**.

Additionally, pending before the Court is Plaintiffs' Rule 56(d) Motion (Dkt. #42). Having considered the motion and the relevant pleadings, the Court finds that Plaintiffs' motion should be **DENIED**.

## BACKGROUND

### I.     Factual Background

Plaintiffs Kevin Whitt ("Whitt"), Dymphna Ferrel ("Ferrel"), Andrea Collard Gonzales ("Gonzales") and Brittany Hendrickson ("Hendrickson") (collectively, "Plaintiffs") attended the McKinney Independent School District ("MISD") Board of Trustees (the "Board") meeting on April 26, 2022 at the MISD Community Event Center (Dkt. #22 at p. 3). Plaintiffs attended the

meeting because they had learned that certain books in the MISD school libraries allegedly contained sexually explicit material, and they wished to express their view that the books should be removed from MISD school libraries (Dkt. #22 at p. 4).

Defendant Amy Dankel ("Dankel"), President of the MISD Board, opened the April 26 Board meeting with the following statement, in relevant part:

> I would like to welcome everyone to the McKinney ISD monthly board meeting. As a board, we would like to begin by establishing a few expectations. In light of issues that we have experienced over the last several board meetings, let me start by saying that we understand that many of you come to this meeting for different reasons. Some of you are here for student recognition, some of you are here for public comment, and others are here to learn more about the topics on the board agenda. Regardless of your reason for being here, we want you to know – we want you to feel welcome. I mean, we have said all along many school districts suffer from apathy of the community and parents. And that certainly is not the case in McKinney. We have a long-standing tradition in McKinney ISD of respect and order at our school board meetings, regardless of how contentious or emotional a topic might have been. In recent months, however, a demonstration of self-control and decorum at meetings has deteriorated. Over the past five months, multiple attendees have been escorted out of the meeting for disruptive and inappropriate behavior.
> …
> Individuals have interrupted speakers, made rude comments to others in attendance, and even accosted students and staff and parents.
> …
> Therefore, please be advised that decorum and order will be maintained during the meeting. This includes enforcement of the Texas Penal Code and the Texas Education Code sections which permit law enforcement to remove individuals who disrupt a public meeting.
>
> Consider this your only warning.
> …
> The individual will be escorted out, issued a criminal trespass citation, and will no longer be permitted on MISD property.
> …
> The public comment of the meeting should be a place where students and community members feel safe and speak on diverse topics and opinions, absent of ridicule – ridicule and intimidation. If you would like to show your support for a speaker during public input, simply raise your hand after they have spoken.
> …

> To be clear, outbursts or comments made in the audience during public comment and during the meeting are simply not permitted. Holding side conversations during the meeting, which is disruptive to other attendees and the board, is not permitted. All of these are considered a disruption of the meeting and will result in being removed and issued a citation. We're confident that everyone will respect these expectations. And if you feel you may struggle to do so, now would be the time to exit, because we're about to start public comment.

(Dkt. #33, Exhibit 1, Exhibit C).

Dankel designated Robert Montgomery, the MISD Director of Safety, Security, and Transportation to "point out which members of the crowd were violating the rules she set so that the McKinney Police would know who to remove from the meeting" (Dkt. #22 at p. 4). Plaintiffs allege that, "prior to the meeting, Dankel and Montgomery had met with the McKinney Chief of Police, Greg Conley, regarding police enforcement of her rules" (Dkt. #22 at p. 4). Sergeant Farrel Ritchie ("Sergeant Ritchie"), Officer Bryant Bailey ("Officer Bailey"), and Officer Cherrie Silas ("Officer Silas") (collectively, the "McKinney Officers") were present at the Board meeting (*See* Dkt. #22).

According to Plaintiffs, those at the Board meeting wearing the color green supported the removal of the books, while those wearing blue opposed removal of the books (Dkt. #22 at p. 5). Plaintiffs contend that the opposing views of the "green group" and the "blue group" were apparent from the content of their speech and were generally known by Defendants (Dkt. #22 at p. 5). Plaintiffs allege that individuals in both groups violated the rules for the Board meeting set forth by Dankel (Dkt. #22 at p. 5). Even so, Plaintiffs contend that "Montgomery only pointed out individuals in the crowd for removal, who were wearing green, or who were otherwise know to oppose the books" (Dkt. #22 at pp. 5–6). Plaintiffs further contend that no individuals wearing

blue or who were otherwise known to support the books at issue were identified to be removed, "despite displaying similar behavior to those wearing green" (Dkt. #22 at p. 6).

### A. Factual Background as to Whitt

Plaintiffs allege that during the public comment section of the meeting, a woman read an excerpt from one of the books at issue in the MISD school libraries (Dkt. #22 at p. 6). Plaintiffs state that "[a]fter the woman was finished reading and her time was up, Whitt said the word 'disgusting.' Upon hearing Whitt's comment, Dankel stopped the meeting and asked Montgomery to point out who made the comment. Montgomery pointed out Whitt, and Dankel instructed the McKinney Police to remove Whitt from the meeting" (Dkt. #22 at p. 6). Sergeant Ritchie and Officer Bailey removed Whitt from the meeting (Dkt. #22 at p. 6). Officer Silas was not alleged to be involved (*See* Dkt. #22).

When Whitt attempted to attend the next MISD Board meeting on May 17, 2022, Sergeant Ritchie issued Whitt a criminal trespass citation (Dkt. #22 at p. 10).

### B. Factual Background as to Ferrel

Plaintiffs allege that Sergeant Ritchie and Officer Bailey "confronted Ferrel and instructed her to leave" (Dkt. #22 at p. 8). Plaintiffs further allege that, despite Ferrel protesting that she had done nothing wrong, Sergeant Ritchie and Officer Bailey escorted her from the Board meeting (Dkt. #22 at p. 8).  Officer Silas was not alleged to be involved (*See* Dkt. #22).

Plaintiffs' Exhibit G shows that, after a man was removed from the Board meeting for clapping, Ferrel stated "He clapped, that was his crime" (Dkt. #42, Exhibit G at 1:05). Montgomery identified Ferrel as having disrupted the meeting and Sergeant Ritchie removed

Ferrel from the Board meeting (Dkt. #42, Exhibit G at 1:16, 1:33). Officer Bailey assisted Sergeant Ritchie in removing Ferrel from the Board meeting (Dkt. #33 at p. 11).

Ferrel attended the next MISD Board meeting on May 17, 2022 without issue (Dkt. #22 at p. 11). However, when she attended the May 31, 2022 special session, Plaintiffs allege that a McKinney police officer instructed her to leave because she was being issued a criminal trespass citation (Dkt. #22 at p. 11).

### C. Factual Background as to Gonzales

Plaintiffs allege that Ferrel appeared nervous after Officer Silas approached her, so Gonzales "made a statement to her in front of Officer Silas regarding First Amendment constitutional rights and rights conferred to the public by the Texas Open Meetings Act" (Dkt. #22 at p. 7). Plaintiffs further allege that Gonzales asked Officer Silas why she was approaching her and that Gonzales informed Officer Silas that she was there to speak at the meeting (Dkt. #22 at p. 7).  According to Plaintiffs, Gonzales showed Officer Silas her speaker form, and Officer Silas asked her to leave (Dkt. #22 at p. 7–8). Gonzales protested that she had done nothing wrong and refused to leave, and at that point, Officer Silas removed Gonzales from the Board meeting (Dkt. #22 at p. 8). Sergeant Ritchie and Officer Bailey are not alleged to be involved (*See* Dkt. #22).

Plaintiffs' Exhibit G depicts Gonzales stating "she's not interested in contracting with you," and "I'm her constitutional advocate." (Dkt. #42, Exhibit G at 2:18). Plaintiffs' Exhibit G then shows that Montgomery pointed out Gonzales to be escorted from the Board meeting (Dkt. #42, Exhibit G at 2:22). At that point, Officer Silas removed Gonzales from the Board meeting (Dkt. #42, Exhibit G at 2:35).

According to Plaintiffs, Gonzales has not attempted to return to a Board meeting (Dkt. #22 at p. 11).

### D.  Factual Background as to Hendrickson

Plaintiffs allege that Hendrickson was not allowed to speak during the public comment segment despite filling out the required form and being assured by the Assistant Superintendent of Student Activities, Health, and Safety for MISD that it was "perfect" (Dkt. #22 at p. 9). At the beginning of the public comment segment, Dankel explained that six people did not fill out the entire form, so those people would not be allowed to speak (Dkt. #22 at p. 9). Hendrickson was one of those who did not fill out her form correctly, and she was not allowed to speak (Dkt. #22 at p. 10). Indeed, Plaintiffs allege that a review of the carbon copy of Hendrickson's form showed that "she had not checked a box on the form to indicate whether she was a student, staff member, MISD resident, and/or MISD parent/guardian" (Dkt. #22 at p. 10; Dkt. #33, Exhibit E). The McKinney Officers are not alleged to have removed Hendrickson from the Board meeting or to have otherwise contacted Hendrickson (*See* Dkt. #22).

### II.   Procedural History

On September 23, 2022, the McKinney Officers filed their Second Motion and Brief for Summary Judgment (Dkt. #33). On September 26, 2022, the McKinney Officers filed their Amended Motion to Stay Discovery (Dkt. #35) requesting that discovery be stayed until the Court ruled on their summary judgment motion (Dkt. #35 at p. 1). On October 6, 2022, Plaintiffs responded in opposition to the motion to stay (Dkt. #41) but appear to agree not to seek any discovery until the Court ruled on the motion for summary judgment (Dkt. #41 at p. 1) ("Plaintiffs represent that they will not seek discovery in this matter pending the outcome of the motions for

summary judgment on file."). However, Plaintiffs also stated that they "oppose[d] the Motion to Stay to the same extent that they oppose the MSJ" (Dkt. #41 at p. 1).

On October 13, 2022, Plaintiffs filed their Response to Defendants McKinney Officers Silas, Bailey, and Ritchie's Second Motion and Brief for Summary Judgment (Dkt. #42). Notably, in their response to the motion for summary judgment, Plaintiffs argue that they are entitled to discovery under Federal Rule of Civil Procedure 56(d) because they have set forth a plausible basis showing that additional facts could exist to defeat Defendants' motion for summary judgment (Dkt. #42 at pp. 15–16).

On December 8, 2022, the McKinney Officers filed their Reply for Second Motion for Summary Judgment (Dkt. #48).

On January 27, 2023, the Court granted the Defendants McKinney Officers' Amended Motion to Stay Discovery (Dkt. #51) and indicated it would "take up Plaintiffs' request for discovery under Rule 56(d) in its decision on the summary-judgment motions because Plaintiffs have alternatively requested relief under Rule 56(d) in their responses to those motions" (Dkt. #51 at p. 3). Accordingly, the Court will consider both the McKinney Officers' summary judgment motion and Plaintiffs' Rule 56(d) motion below.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982)

(quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)).  The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiffs allege that the McKinney Officers deprived them of their First Amendment rights in violation of 42 U.S.C. § 1983 and acted in concert to deprive them of their First Amendment rights in violation of § 1983 (Dkt. #22 at p. 11). Specifically, Plaintiffs allege that the McKinney Officers "conspired to and did in, in fact, apply the facially neutral[1] rules to them unequally because of their viewpoint . . . for the purpose of (1) preventing Plaintiffs from speaking at the April Meeting and/or (2) preventing them from speaking at future MISD Board meetings" (Dkt. #42 at p. 5). Plaintiffs allege facts indicating that they did violate the facially neutral rules established by Defendant Dankel but argue that the rules were only enforced for those that opposed the books at issue. The McKinney Officers move for summary judgment on Plaintiffs' § 1983 claims and, alternatively, on the grounds of qualified immunity (Dkt. #33 at pp. 15–22, 26). The Court will first consider whether the McKinney Officers are entitled to qualified immunity before turning to any remaining summary judgment arguments.

**I. The McKinney Officers are entitled to qualified immunity on Plaintiffs' First Amendment and conspiracy claims under § 1983.**

Qualified immunity is a defense available to government officials sued for constitutional violations pursuant to § 1983. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994).  Police officers are government officials entitled to assert the defense of qualified immunity. *Gagne v. City*

---

[1] Plaintiffs make clear that they do not dispute that "Defendant Dankel's time, place, and manner rules were facially neutral for the purpose to maintain decorum and order" (Dkt. #42 at p. 5) (citation omitted).

*of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). Qualified immunity shields government officials from liability for civil damages so long as their conduct does not violate clearly established rights. *Johnston*, 14 F.3d at 1059. The burden is on the plaintiff seeking to defeat qualified immunity to show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). The Court may consider the second analytical prong first. *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).

With respect to the second prong, a defendant is entitled to qualified immunity when his conduct was objectively reasonable in light of clearly established law at the time of the conduct at issue. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1184 (5th Cir. 1990) (overruled on other grounds by *Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)); *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) ("A police officer is entitled to claim the cloak of qualified immunity 'unless it is shown that, at the time of the incident, he violated a clearly established constitutional right.'" (citations omitted)). If the Court determines that the McKinney Officers' conduct did not violate clearly established law, then qualified immunity will shield them from civil liability.

The Court must examine whether the McKinney Officers' actions were objectively reasonable - that is, whether in light of the legal rules clearly established at the time, a reasonable official would understand that what he is doing violates the rights at issue. *Pfannstiel*, 918 F.2d at

1178.  If reasonable public officials could differ on the lawfulness of an officer's actions, the officer is entitled to qualified immunity.  *Id.*  The issue is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he or she was violating a person's constitutionally protected rights under the circumstances of the complained of action.  *See Anderson*, 483 U.S. at 641.  Thus, the Court must determine whether there is a fact issue with respect to whether the McKinney Officers' conduct was objectively reasonable in light of clearly established law regarding the First Amendment rights at issue.

A court should not reserve the objectively reasonable prong of the qualified immunity standard as a fact question for the jury.  *Mangieri*, 29 F.3d at 1016.  Rather, "in evaluating a claim of qualified immunity, the district court is to make a determination of the objective reasonableness as a matter of law."  *Id.*  That said, in those circumstances when there are "underlying historical facts" in dispute that are "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner," the court cannot make a determination on the objective reasonableness and by extension, the applicability of qualified immunity.  *Id.*; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) ("Rule 56 still has vitality in qualified immunity cases if the underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them."); *Johnston v. City of Houston*, 14 F.3d 1056, 1061 (5th Cir. 1994) (denying summary judgment on the basis of qualified immunity where the parties had different versions of what had occurred on material issues).  Thus, the Court must determine whether there is a "general agreement" as to the factual events that give rise to the lawsuit.  *Mangieri*, 29 F.3d at 1016.  If the Court finds a general agreement as to the material underlying facts, it then may

11

determine whether the McKinney Officers' actions were objectively reasonable in light of clearly established law.

### A.   The McKinney Officers are entitled to qualified immunity on Whitt, Gonzales, and Ferrel's First Amendment claims under § 1983.

There is a general agreement as to the material underlying facts pertaining to the McKinney Officers. Based on the underlying facts, the McKinney Officers' actions were objectively reasonable in light of clearly established law regarding the First Amendment.

#### 1.   The underlying historical facts are not in dispute.

The underlying facts that are material to whether the McKinney Officers acted in an objectively reasonable manner are undisputed. Indeed, there is video footage of the Board meeting at issue (Dkt. #33, Exhibit 1, Exhibit J) and footage depicting Whitt, Ferrel, and Gonzales being escorted from the school board meeting by the McKinney Officers (Dkt. #33, Exhibit 3, Exhibit 4, Exhibit 5; Dkt. #42, Exhibit G). Therefore, there is no question as to the actions the McKinney Officers took at the Board meeting.

#### 2.   The McKinney Officers' actions were objectively reasonable in light of clearly established law.

Because there is a general agreement as to the material underlying facts, the Court will now evaluate whether the McKinney Officers' actions were objectively reasonable in light of clearly established law.

The Fifth Circuit has held that a police officer following orders to remove an individual from a city council meeting is entitled to qualified immunity. *See Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017). In *Heaney*, Heaney alleged a violation of his First Amendment rights after he was silenced and ejected at a city council meeting. *Id.* at 798. At the meeting, Heaney registered to

speak during the time allowed for public comment. *Id.* Heany and the presiding chairman had a disagreement during Heaney's allotted time to speak, and the chairman directed the police officer on duty to remove Heaney. *Id.* at 799. The police officer removed Heaney from the meeting. *Id.*

Heaney filed suit, alleging, among other things, that the police officer violated his First Amendment rights. *Id.* at 799–800. The police officer filed a motion for summary judgment, arguing that he was entitled to qualified immunity. *Id.* at 803. The district court granted summary judgment in favor of the police officer on Heany's First Amendment claim. *Id.* Heaney appealed, arguing that the police officer was not entitled to qualified immunity because the police officer was "the individual who actually effectuated the First Amendment violation by seizing and removing [him]." *Id.*

The Fifth Circuit explained that the police officer "had no reason to believe that he was violating Heaney's First Amendment rights by following [the chairman's] order." *Id.* at 804. Further, the Fifth Circuit stated that the police officer "was not required to cross-examine and second-guess [the chairman] regarding his First Amendment motives before acting." *Id.* Thus, the police officer was "entitled to qualified immunity on the First Amendment claim because his actions as sergeant-at-arms were not objectively unreasonable in light of clearly established law." *Id.*

Here, Plaintiffs allege that the McKinney Officers are "not entitled to qualified immunity because they have acted in concert and conspired to exclude Plaintiffs Gonzales, Whitt, and Ferrel from the April 26 Board meeting and future Board meetings" (Dkt. #22 at p. 15). Further, Plaintiffs allege that the McKinney Officers "selectively enforced Dankel's rules by only removing members of the public whose viewpoint opposed Dankel's viewpoint" and further "selectively enforced

13

Dankel's rules by conspiring to issue criminal trespass warrants to anyone who was removed from the April 26 Board meeting" (Dkt. #22 at p. 13). Plaintiffs argue that these "facts constitute[] a violation of clearly established law under long-standing precedent" (Dkt. #42 at p. 12).

The McKinney Officers argue that they were merely maintaining order within the Board meeting, and that there was no constitutional violation under the first prong of the qualified immunity analysis (Dkt. #33 at p. 19). The McKinney Officers contend that because there was no constitutional violation, the Court need not address the second "clearly-established" prong (Dkt. #33 at p. 19). However, the Court believes in these circumstances that the qualified immunity determination is best resolved by first looking to whether the McKinney Officers' conduct was objectively reasonable in light of clearly established law before turning to any constitutional analysis.

### i.      The McKinney Officers' actions in removing Whitt

It is undisputed that, after Whitt said the word "disgusting" and pursuant to the direction given by both Dankel and Montgomery, Sergeant Ritchie and Officer Bailey removed Whitt from the Board meeting (Dkt. #22 at p. 6; Dkt. #33 at p. 9). Officer Silas is not alleged to have been involved in removing Whitt from the Board meeting (*See* Dkt. #22 at p. 6).

### ii.      The McKinney Officers' actions in removing Ferrel

Plaintiffs allege that Sergeant Ritchie and Officer Bailey "confronted Ferrel and instructed her to leave"(Dkt. #22 at p. 8). Plaintiffs further allege that, despite Ferrel protesting that she had done nothing wrong, Sergeant Ritchie and Officer Bailey escorted her from the Board meeting (Dkt. #22 at p. 8). Officer Silas is not alleged to have been involved in removing Ferrel from the Board meeting (*See* Dkt. #22 at p. 8).

Even at the summary judgment stage, a court will assign greater weight "to the facts evident from video recordings taken at the scene." *Buehler v. Dear*, 27 F.4th 969, 979 (5th Cir. 2022). "[A court is] not required to accept factual allegations that are 'blatantly contradicted' by such evidence." *Id.* Instead, it will "view[] the facts in the light depicted by the videotape." *Id.* 979–80. Accordingly, the Court looks to video evidence submitted by Plaintiffs for a more comprehensive depiction of the facts. Plaintiffs' Exhibit G shows that Montgomery identified Ferrel as having disrupted the meeting (Dkt. #42, Exhibit G at 1:16). At that point, the video shows that Sergeant Ritchie removed Ferrel from the Board meeting (Dkt. #42, Exhibit G at 1:33).

### iii.    The McKinney Officers' actions in removing Gonzales

Plaintiffs allege that Gonzales "made a statement to her in front of Officer Silas regarding First Amendment constitutional rights and rights conferred to the public by the Texas Open Meetings Act" (Dkt. #22 at p. 7). According to Plaintiffs, Gonzales also showed Officer Silas her speaker form, and at that point, Officer Silas asked Gonzales to leave (Dkt. #22 at p. 8). Gonzales protested that she had done nothing wrong and refused to leave, and Officer Silas removed Gonzales from the Board meeting (Dkt. #22 at p. 7).

As before, the Court looks to video evidence submitted by Plaintiffs for a more comprehensive depiction of the facts. *Buehler*, 27 F.4th at 979. Plaintiffs' Exhibit G depicts Gonzales stating, "she's not interested in contracting with you," and "I'm her constitutional advocate." (Dkt. #42, Exhibit G at 2:18). Exhibit G then shows Montgomery pointing out Gonzales to be escorted from the Board Meeting (Dkt. #42, Exhibit G at 2:22). At that point, the video shows that Officer Silas removes Gonzales from the Board meeting (Dkt. #42, Exhibit G at 2:35).

### 3. Where the McKinney Officers' actions were objectively reasonable, they are entitled to qualified immunity.

In *Heaney*, the Fifth Circuit explained that a police officer would have "no reason to believe that he was violating [an individual's] First Amendment rights by following [the chairman's] order" to remove the individual from a meeting. 846 F.3d at 804. Moreover, the Fifth Circuit made clear that a police officer is "not required to cross-examine and second-guess [the chairman who gave the order] regarding his [or her] First Amendment motives before acting." *Id.* In light of that decision, a reasonable police officer would not understand that removing an individual from a meeting at the direction of the School Board President or the Director of Safety, Security, and Transportation violates the individual's First Amendment right. Stated differently, *Heaney* establishes that the McKinney Officers' actions as sergeant-at-arms were not objectively unreasonable in light of clearly established law. Therefore, Sergeant Ritchie and Officer Bailey are entitled to qualified immunity on Whitt's First Amendment claim under § 1983. Sergeant Ritchie and Officer Bailey are entitled to qualified immunity on Ferrel's First Amendment claim under § 1983. And Officer Silas is entitled to qualified immunity on Gonzales's First Amendment claim under § 1983.

### 4. Where the McKinney Officers were not personally involved in the alleged First Amendment violation, they are entitled to qualified immunity.

"A plaintiff seeking to overcome qualified immunity 'must specifically identify each defendant's personal involvement in the alleged wrongdoing.'" *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) (citing *Thomas v. Humfield*, 32 F.3d 566, 1994 WL 442484, at *5 (5th Cir. 1994)). Here, Plaintiffs do not point to Officer Silas's personal involvement in the removal of Whitt or Ferrel from the Board meeting (*See* Dkt. #22 at p. 6–8). And Plaintiffs do not point to Sergeant

Ritchie or Officer Bailey's personal involvement in the removal of Gonzales from the Board meeting (*See* Dkt. #22 at p. 7–8). Therefore, Officer Silas is entitled to qualified immunity on Whitt and Ferrel's First Amendment claims under § 1983. And Sergeant Ritchie and Officer Bailey are entitled to qualified immunity on Gonzales's First Amendment claim under § 1983.

### B.     The McKinney Officers are entitled to qualified immunity on Plaintiff Hendrickson's First Amendment claim under § 1983.

Hendrickson's allegations arises from circumstances different from that of Whitt, Ferrel, and Gonzales. Hendrickson was among those not allowed to speak during the public comment segment of the Board meeting (Dkt. #22 at p. 10). Dankel determined that Hendrickson could not speak because Hendrickson did not fill out her speaker form correctly (Dkt. #22 at p. 9).

It is undisputed that Hendrickson did not fill out her speaker form correctly (Dkt. #22 at p. 10; Dkt. #33 at p. 13). It is also undisputed that the McKinney officers did not remove Hendrickson from the meeting (*See* Dkt. #22; Dkt. #33 at p. 13). Nevertheless, Hendrickson alleges that the McKinney Officers deprived her of her First Amendment rights.

The McKinney Officers assert that they are entitled to qualified immunity on Plaintiffs' § 1983 claims (Dkt. #33 at p. 18–22, 26). As previously discussed, "[a] plaintiff seeking to overcome qualified immunity 'must specifically identify each defendant's personal involvement in the alleged wrongdoing.'" *Jimerson*, 94 F.4th at 428 (citing *Thomas*, 1994 WL 442484, at *5).

Here, it is undisputed that the McKinney Officers never came into contact with Hendrickson at the Board meeting. Therefore, Hendrickson cannot identify the McKinney Officers' personal involvement in any alleged deprivation of her First Amendment rights under § 1983. Accordingly, the McKinney Officers are entitled to qualified immunity on Hendrickson's First Amendment claim under § 1983.

**C.    The McKinney Officers are entitled to qualified immunity on Plaintiffs Whitt, Gonzales, Ferrel, and Hendrickson's conspiracy claims under § 1983.**

Plaintiffs allege that the McKinney Officers conspired with Dankel and Montgomery to deprive Plaintiffs of their First Amendment rights in violation of § 1983.

 "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (citation omitted). For a conspiracy claim under section 1983, a plaintiff must prove "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023) (quoting *Pfannstiel*, 918 F.2d at 1187). "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982).

At the summary judgment stage on a § 1983 conspiracy claim, a court "must look first to determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff. Only if that state action is determined not to be objectively reasonable should we look to whether the officer's actions were taken pursuant to a conspiracy." *Pfannstiel*, 918 F.2d at 1187. "If qualified immunity bars [a plaintiff's] underlying First Amendment claim, there is no need to reach the issue of whether a conspiracy existed to engage in those actions." *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022). This is because the conspiracy claim is not actionable. *See Hale*, 45 F.3d at 921 ("[A]ll officers alleged to have violated [the plaintiff's] First Amendment rights are entitled to qualified immunity. Therefore, the conspiracy claim is not actionable.").

If the McKinney Officers' removal of Whitt, Gonzales, and Ferrel were the only actions alleged to have deprived them of their First Amendment rights, an analysis of Plaintiffs' § 1983

conspiracy claim against the McKinney Officers' would be straightforward. The McKinney Officers are entitled to qualified immunity on Plaintiffs Whitt, Gonzales, Ferrel, and Hendrickson's underlying First Amendment claims because the McKinney Officers' conduct was objectively reasonable, so there would be no need to determine whether the McKinney Officers were a part of a conspiracy to deprive Plaintiffs of their First Amendment rights. The conspiracy claim against the McKinney Officers would not be actionable.

However, in these circumstances, there are additional state actions by the McKinney Officers' alleged co-conspirators that are said to have deprived Plaintiffs of their First Amendment rights as well. Those additional state actions are: 1) Dankel's direction to Montgomery to have the McKinney Officers remove Whitt; 2) Montgomery's direction to the McKinney Officers to remove Whitt, Ferrel, and Gonzales; and 3) Dankel's determination that Hendrickson would not be allowed to speak during the public comment segment. And as more thoroughly explained in the Court's Order on Defendants' Dankel and Montgomery's Motion for Summary Judgment on Qualified Immunity, there is a fact issue regarding Dankel and Montgomery's subjective intent in their actions that precludes summary judgment on their qualified immunity defenses for Whitt, Ferrel, and Gonzales's First Amendment claims.

Therefore, the Court moves forward in its qualified immunity analysis for the McKinney Officers to determine whether Plaintiffs have specifically pointed to the McKinney Officers' personal involvement in any alleged conspiracy to deprive Plaintiffs of their First Amendment rights. As evidence of an agreement to do so, Plaintiffs' put forth a declaration of Chad Green ("Green").

Green states:

> When the Board met in December 2021, I arrived at the MISD Community Events
> Center roughly twenty to thirty minutes prior to the Board meeting start time. As I
> walked through the office area located adjacent to the meeting hall, I observed Amy
> Dankel meeting with Shawn Pratt and someone who appeared to be a high-ranking
> member of the McKinney Police Department.

(Dkt. #38, Exhibit A). Green further states that he believes that member of the police department
was Greg Conley, the McKinney Chief of Police, but he "cannot be certain" (Dkt. #38, Exhibit
A). Plaintiffs allege that this member of the police department observed by Green was "the
[McKinney Officers'] superior" (Dkt. #42 at p. 15). Plaintiffs then allege that the McKinney
Officers were "aware of and participated in this conspiracy as indicated by their conduct" (Dkt.
#42 at p. 15). And that "perhaps the [McKinney Officers] were even selected for security at the
meeting because their political views align with Dankel's on the issue of the books" (Dkt. #42 at
p. 17).

However, to reiterate, "[a] plaintiff seeking to overcome qualified immunity 'must
specifically identify each defendant's personal involvement in the alleged wrongdoing.' " *Jimerson
v. Lewis*, 94 F.4th at 428 (citing *Thomas*, 1994 WL 442484, at *5). Here, Plaintiffs have not
specifically identified any personal involvement of the McKinney Officers in the alleged
conspiracy, apart from their removal of Whitt, Ferrel, and Gonzales, which was deemed objectively
reasonable conduct. Rather, Plaintiffs have merely speculated that the McKinney Chief of Police
or other high-ranking member of the department was involved in the alleged conspiracy and then
recruited the McKinney Officers to become involved in the alleged conspiracy as well. That is not
enough to overcome a qualified immunity defense. Therefore, the McKinney Officers are entitled
to qualified immunity on Plaintiffs Whitt, Gonzales, Ferrel's § 1983 conspiracy claims.

As to Hendrickson's § 1983 conspiracy claim, the McKinney Officers' entitlement to qualified immunity is two-fold. First, they are entitled to qualified immunity for the reasons stated above—Plaintiffs have not pointed to any personal involvement of the McKinney Officers in any agreement to deprive Hendrickson of her First Amendment rights. Additionally, as more thoroughly explained in the Court's Order on Defendants' Dankel and Montgomery's Motion for Summary Judgment on Qualified Immunity, Dankel is entitled to qualified immunity for her action in determining that Hendrickson would not be allowed to speak during the public comment segment because this was not a violation of Hendrickson's constitutional rights as a matter of law. Accordingly, Hendrickson's § 1983 conspiracy claim against Dankel and her alleged co-conspirators, the McKinney Officers, is not actionable.

### II. Plaintiffs have not met their burden under Rule 56(d).

In its order granting Defendants' McKinney Officers Amended Motion to Stay Discovery (Dkt. #51), the Court indicated it would "take up Plaintiffs' request for discovery under Rule 56(d) in its decision on the summary-judgment motions because Plaintiffs have alternatively requested relief under Rule 56(d) in their responses to those motions" (Dkt. #51 at p. 3). Specifically, Plaintiffs move for a continuance to conduct additional discovery on the issue of qualified immunity under Rule 56(d) in the event that their evidence is not sufficient to defeat summary judgment (Dkt. #42 at p. 3).

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

Rule 56(d) "discovery motions are broadly favored and should be liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (internal quotation marks omitted). The Court generally should grant "a continuance for additional discovery if [the nonmovant]: (i) requested extended discovery prior to [the Court's] ruling on summary judgment; (ii) placed [the Court] on notice that further discovery pertaining to the summary judgment motion was being sought; and (iii) demonstrated to [the Court] with reasonable specificity how the requested discovery pertained to the pending motion." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) (citations omitted) (construing former FED. R. CIV. P. 56(f)).

"To succeed on a Rule 56(d) motion, . . . the party requesting discovery must provide an affidavit or declaration in support of the request that 'state[s] with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials w[ill] assist him in opposing summary judgment.'" *Whitener v. Pliva, Inc.*, 606 Fed. App'x 762, 765 (5th Cir. 2015) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993)). And the nonmovant must "present specific facts explaining his inability to make a substantive response . . . and specifically demonstrating how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact" and defeat summary judgment. *Washington*, 901 F.2d at 1285 (internal quotations and citations omitted) (construing former FED. R. CIV. P. 56(f)). The nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Raby*, 600 F.3d at 561 (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5thCir. 1980)). "Rather, a request to stay summary judgment under [Rule 56(d)] must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and

indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* (quoting *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).

The party requesting the additional discovery or extension also must show that relevant discovery has been diligently pursued. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). The Court may properly deny a Rule 56(d) motion where the movant has "not pursued discovery diligently enough to warrant relief under Rule 56(d)." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (internal quotation marks omitted). Further, "[i]f it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby*, 600 F.3d at 561 (quoting *Access Telecom.*, 197 F.3d at 720).

The Court may also properly deny a Rule 56(d) where "the party filing the Rule 56(d) motion has failed to identify sufficiently specific or material evidence to affect a summary judgment ruling." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016); *accord Mendez v. Poitevent*, 823 F.3d 326, 337 (5th Cir. 2016) (affirming denial of Rule 56(d) motion where Plaintiffs "vaguely assert[ed] . . . that deposing the witnesses would have permitted [plaintiffs] to further discover the facts from the witnesses, " and "did not demonstrate below how the additional discovery [would] likely create a genuine issue of material fact . . . "[i]nstead, the result of the discovery they sought was wholly speculative" (citations and internal quotation marks omitted)).

Here, the Court finds that Plaintiffs have not met their burden under Rule 56(d). The Court is not convinced that further discovery will provide evidence creating a genuine issue of material

fact as to the McKinney Officers' actions with respect to Plaintiffs' § 1983 claims. Therefore, Plaintiff's Rule 56(d) motion should be denied.

## CONCLUSION

It is **ORDERED** that Defendants Sergeant Farrel Ritchie, Officer Bryant Bailey, and Officer Cherrie Silas's Second Motion and Brief for Summary Judgment (Dkt. #33) is **GRANTED**.

It is further **ORDERED** that Plaintiffs Kevin Whitt, Dymphna Ferrel, Andrea Collard Gonzales, and Brittany Hendrickson's § 1983 claims and §1983 conspiracy claims against Defendants Sergeant Farrel Ritchie, Officer Bryant Bailey, and Officer Cherrie Silas are **DISMISSED with PREJUDICE**.

It is further **ORDERED** that Plaintiffs Kevin Whitt, Dymphna Ferrel, Andrea Collard Gonzales, and Brittany Hendrickson's Rule 56(d) Motion (Dkt. #42) is **DENIED**.

**IT IS SO ORDERED.**

 **SIGNED this 12th day of June, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE